[No. 3441.  Decided January 19, 1900.]

GEORGE BEEDY *et al., Respondents,* v. J. G. PACEY,
*Appellant.*

CARRIERS—CONVERSION—ABANDONMENT OF GOODS BY OWNER.

The refusal of the owner of goods shipped by himself to
himself as consignee, to accept the goods at the point to which
consigned and pay the freight therefor, constitutes an abandon-
ment of the goods, and the owner is estopped from afterwards
asserting that the carrier has converted them, no matter what
disposition the carrier makes of them.

Appeal from Superior Court, King County.—Hon.
E. D. BENSON, Judge.  Reversed.

*Stratton & Powell,* for appellant.

*E. H. Guie,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—The respondents, who were plaintiffs
below, brought this action against the appellant to recover
the value of certain lumber which they alleged the appel-
lant had converted to his own use.  They alleged that on
or about the 20th day of September, 1897, they, through
their representatives at Seattle, delivered to the defendant
for shipment to Hope City, or Sunrise City, Alaska,
eleven thousand one hundred fifty feet of lumber, for
which they agreed to pay as freight ten dollars per thou-
sand feet; that the appellant agreed to deliver the lumber
to respondents, or their representative, W. H. Johnson,
at Hope City, or Sunrise City, Alaska; that upon the
arrival of the lumber at Sunrise City the respondents, in
company with Johnson, demanded of appellant's agent the
delivery to them of the lumber at Hope City, which the
agent refused; that they then agreed and offered to receive
the lumber at Sunrise City, and offered to pay the freight

on the same, and that appellant refused to deliver the
lumber, or any part of it, and converted the same to his
own use; that the lumber was of the value of sixty dollars
per one thousand feet. The appellant, for answer, denied
the main allegations of the complaint, and alleged affirm-
atively that one F. A. Johnson, and one McIntyre, acting
for and on behalf of the respondents, requested the appel-
lant to transport upon his schooners about forty-eight
thousand feet of lumber from Seattle, in the state of
Washington, to Sunrise City, in the territory of Alaska,
and delivered to appellant the lumber for shipment at
Seattle; that prior to the time the lumber was loaded,
Johnson and McIntyre stated to appellant that some of
the lumber was to be delivered to respondents, and the bal-
ance to the Polly Mining Company, at Sunrise City; that
the appellant thereupon requested that the said McIntyre
and Johnson segregate and separate the lumber which
was to be delivered to the Polly Mining Company, from
that which was to be delivered to the respondents, but that
they refused to do so, and instructed the appellant to ship
the lumber as a whole, without segregation, and to deliver
to respondent such portion of the lumber as the respond-
ents should at that point identify as shipped to them and
should accept, and to deliver to the Polly Mining Com-
pany the balance of the lumber; that he carried the lum-
ber, without segregation, in a mass, to Sunrise City, and
immediately notified the respondents at Sunrise City of
the arrival of the lumber; that the respondents thereupon
inspected and examined the lumber, and refused to receive
or accept any portion of it, and refused to pay the balance
of the freight charges then due, or any part thereof; that
theretofore, and prior to the shipment of the lumber, the
respondents had paid to appellant one hundred dollars as
part of the freight; that, after the arrival of the lumber
at Sunrise City, and their refusal to accept the same, the

respondents demanded repayment of the freight money advanced, which was repaid them by the appellant and accepted by respondents as a full payment, satisfaction, and discharge. The reply admitted that the lumber was shipped at Seattle by respondents' agents, to be delivered upon identification and selection; admitted the repayment of the advanced freight money; and alleged that the appellant refused to permit the respondents to identify and select the lumber and pay the freight thereon, but demanded that they pay the freight on the whole cargo of lumber, amounting to about $500, as a condition precedent to the selection of their own lumber.

On the trial each of the parties put in evidence tending to support the allegation of their respective pleadings. The respondents' evidence tended to show that the appellant's agent refused to recognize them in the transaction at all, or deliver the lumber to the person to whom it was billed, unless that person would not only pay the freight on the whole cargo, but the purchase price of the lumber as well. The appellant's evidence tended to prove that neither the respondents nor the other parties having lumber in the shipment would receive the same, because, as they claimed, it was not suitable for the purposes for which they·desired to use it; the agent to whom it was billed, testifying that that was the principal reason why it was not accepted. It was shown further that subsequent to this time the appellant's agent sold some three thousand feet of the lumber included in the shipment to the respondents. At the conclusion of the evidence the trial court took from the jury all questions of fact save that of the value of the lumber, and instructed the jury to find the value of the lumber at Sunrise City, deduct from that the freight to be paid, and bring in a verdict for the respondents for the remainder.

In withdrawing from the jury all questions of fact save that of the value of the lumber the trial court erred. If it be true that the respondents did refuse to receive the lumber, the fact that the appellant, through his agent, subsequent to that time, sold part of the lumber, would not warrant an instruction that he had converted to his own use that part, much less would it warrant an instruction that he had converted the whole amount shipped. The ordinary duty of a carrier, where the consignee refuses to receive the goods shipped, is to store them either in his own warehouse or that of some responsible third party, notify the shipper or owner of such refusal, and hold them for a reasonable time subject to further orders. But if the shipper be the owner and consignee, no such duty is imposed on the carrier. The refusal of the owner to accept the goods, under such circumstances, constitutes an abandonment of the goods, and the owner is estopped from afterwards asserting that the carrier has converted them, no matter what disposition the carrier makes of them. The owner cannot make a sale of his goods to the carrier in that way.

There being a substantial controversy in the evidence over the question of conversion, the judgment is reversed and the cause remanded for a new trial.

GORDON, C. J., and DUNBAR and REAVIS, JJ., concur.