SAMUEL HARDIN GRAIN COMPANY, Respondent,
v. CHICAGO & ALTON RAILWAY COMPANY,
Appellant.

Kansas City Court of Appeals, October 5, 1908, and January 11,
1909.

COMMON CARRIERS: Damaged Shipment: Duty of Consignee:
Measure of Damages: Instructions.  Plaintiff shipped to its
own order with directions to notify B, two cars of oats.  On
reaching their destination B was promptly informed, but neither
he nor any other agent of the shipper appeared.  The carrier
held the oats for a month and turned them over to a com-
mission house who found them in a damaged condition and
sold them.  *Held*, that the shipper was only entitled to recover
the amount the oats sold for; and an instruction telling the
jury to allow the market price of oats at the time of their
arrival at destination was error, since there was no evidence
as to their condition at that time as the shipper had failed
in his duty promptly to inspect them.

Appeal from Jackson Circuit Court.—*Hon. James H.
Slover*, Judge.

REVERSED AND REMANDED.

*Scarritt, Scarritt & Jones*, for appellant, filed argu-
ment.

*Ringolsky & White*, for respondent, filed argument.

JOHNSON, J.—Action by a shipper against a
common carrier to recover the value of two cars of oats
shipped from Kansas City to Birmingham, Alabama,
and not delivered at destination to the shipper who was
also the consignee.  The petition is in two counts, each
car being treated as the subject of a separate cause of
action.  Verdict and judgment were for plaintiffs on
each count for the full amount demanded, and the cause
is here on the appeal of defendant.  Plaintiffs, who

were grain merchants at Kansas City, bought the oats on track at Kansas City and sold them to B. B. Blackwell of Birmingham. It was found that the oats which had been shipped to Kansas City from Iowa were in defective cars and after delivery to defendant, they were transferred to other cars and bills of lading issued to plaintiffs for the transportation of the cars through to Birmingham. Plaintiffs were designated as consignors and consignees and the bills of lading contained notation "Shippers' Order, notify B. B. Blackwell, Birmingham, Ala." The bills were dated respectively February 21 and 24, 1903, the transfer to different cars was completed about March 3d, and the shipment left Kansas City on that date. One car arrived at Birmingham on March 15th, and the other a day later. The agent at Birmingham of the connecting carrier that completed the transportation immediately notified Blackwell of the arrival of the cars, but no response was made to the notices. For the reason that the property was suffered to remain in the possession of the railroad company unclaimed, the agent turned the cars over to a commission company at Birmingham, to sell for the account of whom it might concern. The first car to arrive was delivered to the commission company on April 7th, the second April 13th. The commission company opened the cars and found the oats wet and badly damaged from having become heated. This was the first inspection made after the arrival of the oats at Birmingham and no witness stated, or was able to state, the condition of the property at the time of its arrival. There is evidence to the effect that the roofs of both cars were leaky and that the oats became wet in the course of the transportation. In good condition, the property would have been worth, approximately $500 per car at Birmingham, but in its damaged state, the broker was able to realize only $300 for the contents of both cars. The proceeds of the sale, less the commission charged for selling, were turned over to the railroad company

by the broker and applied to the payment of the freight charges which had not been paid in advance. After the payment of these charges, there remained $13 or $14 and this sum is still in the hands of defendant.

There is no controversy over the facts that the commission company realized the full market value of the property in its damaged condition and that the charges for commission and freight were reasonable. In the instructions given at the request of plaintiff, the court expressed the view that if the oats were in a sound condition when they left Kansas City, as plaintiffs' evidence tended to show, and were damaged by reason of being negligently carried by defendant in leaky cars, plaintiffs were entitled to recover, and on the measure of damages, told the jury to assess the damages, if they found for plaintiffs, at the reasonable cash market value of the oats at Birmingham on the respective dates of the arrival of the cars at that place. This was error. There was no evidence to show what the oats were worth on those dates, nor was it possible for plaintiffs to produce any proof of that fact, since it was impossible for anyone to know what the condition of the oats was on the dates of their arrival. Indeed, there is no proof that the property was damaged at all while en route. Granting the contention of plaintiffs and other witnesses that the grain left Kansas City in sound and merchantable condition, the fact that after it had remained in sealed cars from three weeks to a month in the yards at Birmingham it was found to be damaged by the processes of fermentation, is no proof that it was in that condition when it arrived and certainly is no proof of the extent of the damage, if any, sustained at that time.

In directing that the damages be assessed at the value of the property on the dates mentioned, the court necessarily turned the jury into the field of speculation and gave them rein to guess at the condition of the

property. Doubtless the court was prompted to give such instructions by the idea that defendant, if the main issue that the property was injured as the result of its negligence, were found against it, should be held liable not only for the damages sustained by the oats in transportation, but also for those which occurred while the cars remained in the yards at Birmingham after plaintiffs' vendee had been notified, and thereby given a reasonable opportunity to inspect them. But such conclusion is not sound. The last carrier fully performed the contract of affreightment by giving to Blackwell prompt notice of the arrival of the cars. As between the parties to the contract, Blackwell was the agent of plaintiffs for the purpose of receiving these notices and notice to him was notice to plaintiffs. They should have arranged for inspecting, receiving and caring for the property on being notified of its arrival and in failing to do this, must stand the loss sustained during the time the cars remained in the yards at Birmingham.

In discussing this identical subject, we said in Freeman v. Railway, 118 Mo. App. l. c. 534: "As consignees, it was their duty to be on hand ready to receive it. [Hutchinson on Carriers, sec. 386.] So far as the relation between plaintiffs and defendant is concerned, the vendees at New Iberia may properly be treated as agents designated by plaintiffs to receive the corn. They permitted it to remain sealed in the car for two weeks without any inspection. How can any reasonable person say how much damage the corn received from the injurious processes that must have been in operation during that period? If this fact cannot be known, neither can any one tell the extent of the damages that had accrued when the car reached its destination."

As it is conceded by plaintiffs' witnesses, and the fact is obvious, that the damaging processes were at work while the cars were in the yards, and as it is impossible to know the extent of the damage wrought during

that period and as such damage, for the reasons stated, must be held to be the direct result of the fault of plaintiffs in not providing for an inspection promptly after being notified of its arrival and only the remote result of the negligence charged against defendant, it must follow that the recovery of plaintiffs should have been restricted to the net proceeds of the sale of the oats. This conclusion is based on the ground of an entire failure of proof to support the contention of plaintiffs that the injury to the property was the direct result of the negligence pleaded.

The judgment is reversed and the cause remanded. All concur.