LAPP INSULATOR CO., INC. *vs.* BOSTON AND MAINE
RAILROAD.

Suffolk.     March 3, 1953. — May 6, 1953.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Carrier*, Of goods, Notice of nondelivery.  *Notice.  Contract* With carrier.
  *Interstate Commerce.  Conflict of Laws.  Federal Law.  Practice, Civil*,
  Correction of error, Commencement of action.

Whether or not a railroad as terminal carrier of goods transported in
  interstate commerce and consigned by the shipper to his own order
  has a duty to notify the shipper that the goods have not been delivered
  to the shipper's customer designated in the bill of lading is a ques-
  tion to be determined by Federal law, and, in the absence of any
  pertinent provision in the bill of lading or in any Federal statute, by
  the principles of common law as accepted and applied in Federal
  courts.  [208–209]
In the absence of a decision by the Supreme Court of the United States
  on a Federal question, a State court in which such question is raised
  may determine the appropriate rule to be applied.  [209]
Findings were warranted that a railroad as terminal carrier of goods
  transported in interstate commerce and consigned by the shipper to
  his own order was under a common law contractual duty to notify the
  shipper that the goods had not been delivered to the shipper's customer
  designated in the bill of lading, and that failure of the railroad so to
  notify the shipper was a breach of their contract, where the customer
  informed the railroad on arrival of the goods that he was presently
  unable to pay a sight draft on him attached to the bill of lading and
  requested that the goods be stored at his expense in the railroad's
  freight house. in which they remained for more than two months until
  they were destroyed by fire.  [209–211]
The remedy for an inconsistency between a general finding and the grant-
  ing of a request for ruling by a judge hearing an action without jury
  is a motion to correct the inconsistency or a motion for a new trial.
  [211]
Mere evidence that the records of the sheriff's office showed that a writ
  was received in that office on December 29, 1950, did not preclude a
  finding that the action was commenced within two years and one day
  from December 16, 1948, where the date of the writ was December 15,
  1950, and there was evidence that it was drawn on its date by the plain-
  tiff's attorney "with the intention and purpose of commencing action
  immediately and delivering it to the sheriff for service immediately."
  [212–213]

CONTRACT OR TORT. Writ in the Superior Court dated December 15, 1950.

The action was heard by *Smith*, J.

*Morris Michelson*, for the plaintiff.

*Charles E. Holly*, for the defendant.

SPALDING, J. This is an action of contract or tort, in five counts, to recover the value of goods destroyed by a fire in the defendant's freight house in Concord, New Hampshire. The case was submitted on a "statement of agreed facts" and certain evidence introduced by agreement in lieu of oral testimony. Hence it is not a case stated but an agreement as to evidence. *Frati* v. *Jannini*, 226 Mass. 430, 431. *Pequod Realty Corp.* v. *Jeffries*, 314 Mass. 713, 715. *Scaccia* v. *Boston Elevated Railway*, 317 Mass. 245, 249. *King Features Syndicate, Inc.* v. *Cape Cod Broadcasting Co. Inc.* 317 Mass. 652, 653.

The facts and evidence may be summarized as follows: The goods here involved were shipped by the plaintiff from LeRoy, New York, in two lots on order bills of lading, the terms of which had been approved by the interstate commerce commission. The first shipment, valued at $2,575.92, was delivered to the Baltimore & Ohio Railroad on July 26, 1948. The second, valued at $310.42, was delivered to the same carrier on July 28, 1948. In the course of transportation the defendant became the terminal carrier of the goods. The goods were consigned by the plaintiff to its own order, and each bill of lading contained the provision "Notify Davis Transformer Co., 297 No. State St. Concord, New Hampshire." The bills of lading which had been issued to the plaintiff were indorsed and transmitted by the plaintiff, through its bank in LeRoy, to the First National Bank of Concord, New Hampshire, with sight drafts against Davis Transformer Company (hereinafter called Davis) for $2,-575.92 and $310.42 attached. The shipments arrived in Concord on August 16 and 17, 1948, and the defendant duly notified Davis of their arrival. Davis, however, informed the defendant that it was unable to pay the sight drafts and requested the defendant to store the goods in its freight

house at its (Davis's) expense. The defendant complied with this request and on August 19, 1948, the goods were placed in its freight house. On "several occasions up to and including . . . November 3, 1948," Davis notified the defendant of its intention to take delivery when financially able to do so. On November 3 the goods were destroyed by a fire of unknown origin which started in a part of the defendant's freight house leased to and in the control of a third party. The employees of the defendant "made every effort to remove the goods stored" in the freight house, but were unable to save those owned by the plaintiff.

After the fire the defendant notified the plaintiff of the nondelivery of the goods, their storage in the freight house, and their destruction. There had been no prior notice to the plaintiff of any kind. The plaintiff duly filed claims for the declared value of the goods. The trial judge, sitting without a jury, found for the plaintiff on the counts (2 and 4) which involved the second shipment, and for the defendant on counts 1, 3, and 5 which relate to the first shipment.[1] The case is here on the exceptions of both parties to the judge's action in granting and denying numerous requests for rulings.

1. The second count alleges a breach of contract. The breach relied on is the failure of the defendant to notify the plaintiff within a reasonable time of the arrival of the goods in Concord that Davis had not taken delivery of them. The plaintiff has suggested three sources from which the contractual duty in question might be derived: (1) the custom of carriers to give such notice and the reliance of shippers upon the custom; (2) the implicit requirements of certain interstate commerce commission regulations bearing explicitly on the procedures which must be followed by the carrier in these circumstances in order to impose storage or demurrage charges upon the shipper; (3) and a common law duty which is imposed upon the carrier and which

---

[1] Counts 1 and 3 were in contract and correspond to counts 2 and 4 which were also in contract. The fifth count, which concerns the first shipment, was in tort.

Lapp Insulator Co. Inc. *v.* Boston & Maine Railroad.

qualifies and becomes a part of the contract of carriage. The first and second of these theories were rejected by the trial judge, who granted the defendant's ninth, tenth, eleventh, and twelfth requests. The plaintiff's exceptions to their allowance need not be considered, for the judge, by granting the plaintiff's third, fourth, and tenth requests[1] and by denying the defendant's seventh request,[2] adopted the third theory of contractual liability stated above, namely, that the defendant at common law owed to the plaintiff a duty to notify. We are of opinion that the judge was right and that the defendant's exceptions to the disposition of these requests must be overruled.

These rulings present the question whether the defendant was under a common law duty to notify the plaintiff. Since the shipments here involved were interstate, the rights of the plaintiff as shipper and the obligations of the defendant as terminal carrier are governed by Federal law. U. S. C. (1946 ed.) Title 49, §§ 1 (1) (a), 1 (3), 20 (11). *Adams Express Co.* v. *Croninger,* 226 U. S. 491. *Southeastern Express Co.* v. *Pastime Amusement Co.* 299 U. S. 28. By the terms of U. S. C. (1946 ed.) Title 49, § 20 (11), as they apply to this case, the defendant, as terminal carrier, may be held liable "to the lawful holder . . . [of the bill of lading issued by the initial carrier upon receipt of the goods for shipment in interstate commerce] for the full actual loss, damage, or injury to such property caused by it . . . *Provided further,* That nothing in this section shall deprive any holder of such . . . bill of lading of any remedy or

---

[1] "3. The evidence warrants a finding that the defendant's failure to notify the plaintiff within 48 hours (exclusive of Sundays and holidays) that delivery was not made was a breach of the contract."

"4. When the customer to whom notice of arrival is to be given under an Order-Notify bill of lading refuses or fails to accept goods from a railroad, it is the duty of the railroad to exercise due diligence in notifying the consignor of the nondelivery."

"10. Even if there were no evidence of a custom or rule of notification of nondelivery, the defendant was under a common law duty to use care and diligence in notifying the plaintiff within a reasonable time when the customer failed to take the goods."

[2] "7. The defendant had no duty to notify the plaintiff that the 'notify party' did not take delivery of its goods or that they were stored in defendant's freight house."

right of action which he has under the existing law . . . ."
In addition to the rights secured to it by the bill of lading
itself, the provisions just recited permit the plaintiff to
assert against the defendant any rights deriving from the
statute or the common law. *Cincinnati, New Orleans &
Texas Pacific Railway* v. *Rankin*, 241 U. S. 319, 326–327,
and cases cited. *Southern Railway* v. *Prescott*, 240 U. S.
632, 639–640. Where, as here, the bill of lading and the
statute are silent as to an asserted duty of the carrier to
notify, recourse must be had to the common law. But the
question is nonetheless a Federal one and must be deter-
mined by the principles of common law as accepted and
applied in the Federal courts. *Southern Railway* v. *Prescott*,
240 U. S. 632, 640. *Cincinnati, New Orleans & Texas
Pacific Railway* v. *Rankin*, 241 U. S. 319, 326–327. Where
the Supreme Court of the United States has dealt with the
question its decisions, of course, would be binding on this
court. But where — as is the case here — the decisions of
that court furnish no guide we are free to determine the
appropriate rule to be applied, giving such consideration to
the decisions of lower Federal courts as we think they are
entitled. *Brown* v. *Palmer Clay Products Co.* 290 Mass.
108, 110.

This court has not had occasion to pass upon the ques-
tion whether a carrier has a contractual duty to notify the
shipper that the goods have not been delivered to the
"notify party." It becomes necessary, therefore, to turn
to the decisions in other jurisdictions in order to ascertain
the appropriate rule.

It would appear from an examination of the decisions
elsewhere that there is not a great deal of authority on the
question here presented, and what there is is conflicting.
See note 4 A. L. R. 1285, 1292. The view adopted by the
Supreme Court of Oregon in *Stoddard Lumber Co.* v. *Oregon-
Washington Railroad & Navigation Co.* 84 Ore. 399, 405, is
that the carrier has an absolute duty to give notice with-
out regard to the circumstances attending the particular

shipment.   This view finds support in *Nashville, Chatta-nooga & St. Louis Railway* v. *Dreyfuss-Weil Co.* 150 Ky. 333, and *Emerson* v. *Chicago, Burlington & Quincy Railroad,* 120 Minn. 84.   The decision in *Trinidad Bean & Elevator Co.* v. *Pennsylvania Railroad,* 72 Fed. (2d) 371 (C. C. A. 3), affirming 8 Fed. Sup. 888, holds the opposite and states that there is no duty to notify the shipper of the nondelivery of goods to the "notify party" where they have been shipped to the shipper's order.   To the same effect are *Samuel Hardin Grain Co.* v. *Chicago & Alton Railway,* 134 Mo. App. 681, and *Beedy* v. *Pacey,* 22 Wash. 94.   Intermediate to these views is that reached in *Porter* v. *Pennsylvania Railroad,* 217 App. Div. (N. Y.) 49, 53–54.   There it was held that while there was no absolute duty on the part of the terminal carrier to give notice of nondelivery where the consignor is also the consignee, the circumstances in a particular case may be such as to give rise to that duty, and the question was one of fact for the jury.   The rule of the *Porter* case was followed in *Tri-State Produce Co.* v. *Chicago, Burlington & Quincy Railroad,* 104 Fed. Sup. 452, 457–460.

We are disposed to reject the view that there is no duty on the part of the terminal carrier to notify the consignor in a situation like the present.   Where the "notify party" does not accept the shipment it is not unreasonable, we think, to require the terminal carrier to inform the shipper of that fact so that he may take the necessary steps for the repossession, storage, or disposition of his property. Whether the duty to notify is absolute as in *Stoddard Lumber Co.* v. *Oregon-Washington Railroad & Navigation Co.* 84 Ore. 399, 405, or depends on the attendant circumstances as in *Porter* v. *Pennsylvania Railroad,* 217 App. Div. (N. Y.) 49, 53–54, need not be decided.   It cannot be said as matter of law that the circumstances here were such that the defendant was under no duty to notify the plaintiff.   The granting of the plaintiff's third, fourth and tenth requests indicates that the general finding for the plaintiff can be supported on either view.   It is agreed that no notice of

the nonacceptance of the goods was ever given by the defendant to the plaintiff. Hence a finding was warranted that there was a breach of contract on the part of the defendant.

The defendant argues, however, that even if the defendant was under a duty to notify its failure to do so would not subject it to damages occasioned by loss by fire, as such loss would not be a proximate and natural consequence of the breach of contract. This question, however, is not open on this record and we do not pass on it. It is true that the defendant in various requests asked the court to rule that the failure to notify was not the proximate cause of the plaintiff's loss. It is by no means certain that this group of requests was framed to raise the question now presented. They seem more appropriate to the question of liability under the tort count. But we assume in favor of the defendant that they were intended to raise the question of damages. It is of course familiar law that recovery for breach of contract is limited to those damages which are the natural consequences of the breach or which may be reasonably deemed to have been in the contemplation of the parties when the contract was entered into. *Squire* v. *Western Union Telegraph Co.* 98 Mass. 232. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 445–446. *Curtis* v. *Boston Ice Co.* 237 Mass. 343, 350. Restatement: Contracts, § 330. Williston on Contracts (Rev. ed.) § 1344.

The above mentioned requests, however, were granted. Hence the defendant is in no position to complain. If, as we do not decide, the granting of them was inconsistent with the finding for the plaintiff on the second count, the defendant has not brought that question here. Where a general finding is inconsistent with the granting of a request the remedy is either a motion to correct the inconsistency or a motion for a new trial. *DiLorenzo* v. *Atlantic National Bank*, 278 Mass. 321, 324. *Vieira* v. *Balsamo*, 328 Mass. 37, 39. The defendant did neither.

2. It remains to consider whether the cause of action stated in the first count was seasonably commenced. Aside

from the value of the goods involved, the only significant respect in which this cause of action differs from that alleged in count 2, which involved the second shipment, is in the matter of notice of disallowance of the claim. The defendant mailed its notice of disallowance of the claim relating to the first shipment on December 16, 1948, whereas the notice with respect to the second shipment was mailed on March 15, 1949. The writ was dated December 15, 1950. There was evidence that the plaintiff's attorney "drew the writ on December 15, 1950, with the intention and purpose of commencing action immediately and delivering it to the sheriff for service immediately," and that "the records of the sheriff's office, Suffolk County, show that the writ was received in that office on December 29, 1950." The writ was served on the defendant on January 3, 1951. Under the bills of lading here involved it is provided that "suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim . . . ." See U. S. C. (1946 ed.) Title 49, § 20 (11); *Leigh Ellis & Co.* v. *Davis*, 260 U. S. 682, 688.

Since it will not affect the result we assume, as the defendant contends, that the judge correctly ruled that the defendant was entitled to rely on this provision without pleading it as an affirmative defence. See, however, *Robinson* v. *Trustees of New York, New Haven & Hartford Railroad*, 318 Mass. 121, 128. Compare *L. M. Kirkpatrick Co.* v. *Illinois Central Railroad*, 190 Miss. 157.

The judge denied the plaintiff's fifteenth request which read, "If the issue of the due commencement of the action be open, the evidence warrants a finding for the plaintiff on that issue." The effect of this ruling was that the plaintiff's action arising out of the first shipment was, as matter of law, not seasonably commenced. This was error and the plaintiff's exceptions to this ruling must be sustained. It has been said that "An action is commenced when a writ is made out with an unconditional intent to have it served in due course." *Regan* v. *Atlantic Refining Co.* 304 Mass.

353, 354. *Smith* v. *Greeley*, 291 Mass. 271, 272. *Bunker* v. *Shed*, 8 Met. 150, 153. Sometimes a requirement of delivery to an officer with that intent has been added. *Rosenblatt* v. *Foley*, 252 Mass. 188, 190. *Parker* v. *Rich*, 297 Mass. 111, and cases cited. But whatever the rule may be, it is well settled that the date of the writ is itself prima facie evidence of the date upon which the action was commenced, *Regan* v. *Atlantic Refining Co.* 304 Mass. 353, 354–355, and cases cited, although evidence may be introduced to show that the action was commenced at some other time. *Smith* v. *Greeley*, 291 Mass. 271. *Cincotta* v. *DuPuy*, 294 Mass. 298, 300. But the question here was one of fact and was not converted into a question of law by evidence "that the records of the sheriff's office . . . show that the writ was received in that office on December 29, 1950," fourteen days after the date of the writ. See *Smith* v. *Greeley*, 291 Mass. 271, 273; *Cincotta* v. *DuPuy*, 294 Mass. 298, 300. If the evidence warranted a finding for the plaintiff on the issue of the due commencement of the action — and we are convinced that it did — then the judge was required to find for the plaintiff on the first count. The stipulation under which the case was tried provided that "if the foregoing facts and evidence . . . with reasonable inferences therefrom *warrant* a finding for the plaintiff, with respect to the first shipment judgment is to be entered for the plaintiff in the sum of $2,575.92 with interest from December 16, 1948" (emphasis supplied.) This stipulation was binding on the parties and must be given effect in this court. Inasmuch as the plaintiff has established its right to recover on counts 1 and 2 there is no need to deal with the exceptions arising out of the other counts.

The plaintiff's exceptions are sustained, the finding on the first count is set aside, and a finding is to be entered for the plaintiff on that count in the amount stipulated by the parties. The defendant's exceptions are overruled and the findings on the second and fourth counts are to stand.

*So ordered.*