*Northern District*

No. 5690

**WILLIAM A. CONTE**

v.

**HOMER F. STYLI**

Feb. 28, 1963

*Present*: Brooks, P. J., Connolly & Parker, JJ.

Case tried to Thomson, J. in the Central District Court of Northern Essex. No. 47 of 1962.

*Connolly, J.* In this action of contract, the declaration has two counts—the first for rent due under a written contract under seal, for use and occupancy of land in New Hampshire, and the second count for the purchase price of a "Diner", so called, which was the subject of a conditional sales contract, also in writing and under seal. The contracts are

referred to in the judge's finding as Exhibit C, in the case of the contract for the use and occupancy of the land; and as Exhibit B, in the case of the conditional sale contract; they appear in this opinion [as far as material] after the Agreed Statement of Facts.

The answer is a general denial and that the property as described in the plaintiff's declaration was totally and substantially destroyed by fire; that as a result thereof the subject matter upon which the plaintiff's declaration is based was destroyed and that the defendant was no longer bound by his conditional sales agreement, nor was the defendant bound by his agreement with reference to the lease of the property.

Subject to one qualification, discussed below, the case was submitted on an Agreed Statement of Facts and was regarded by the trial judge and the parties as a "Case Stated."

The Agreed Statement of Facts is as follows:

"1. The plaintiff, a resident of Haverhill, and the defendant, a resident of Groveland, entered into two contracts—one for the lease of real property located in Seabrook, New Hampshire for one (1) year, and one for the conditional sale of a diner known as "Line Diner" located on said property in Seabrook, New Hampshire, both executed October 31, 1960 and submitted herewith. The contracts were executed at the office of Attorney William Kiarsis, Jr. located in Haverhill.

2. Immediately upon execution of these

contracts, the defendant had a right to and did take possession of the premises and made preparation to operate as a restaurant business the aforesaid diner on the said premises which are the subject of the aforesaid contracts. The defendant had no other restaurant business.

3. The defendant paid to the plaintiff the sum of one hundred and forty dollars ($140.00) through March 5, 1961, and nothing more has been paid on the contracts.

4. Since the execution of these contracts, the diner aforesaid has been completely destroyed by fire on March 5, 1961."

In addition to the "Case Stated", evidence was introduced as to the law of the State of New Hampshire which the plaintiff contended should govern in the determination of the parties' rights under the two contracts. Defendant's contention was that the law of Massachusetts was applicable in this instance.

## EXHIBIT B
### KNOW ALL MEN BY THESE PRESENTS

THAT I, William A. Conte, of Haverhill, Massachusetts, as Vendor hereby sells and Homer F. Styli of Groveland in said Commonwealth as Vendee hereby purchases the following described personal property namely:

A DINER known as LINE DINER located on the real estate of Harry E. Chase, Lafayette Highway at Seabrook, Rockingham County, State of New Hampshire for the total time price of $1,600.00 payable by monthly in-

stallments of $133.00 for a period of eleven months and a final installment of $137.00, said monthly installments are payable on the fifteenth day of each month commencing January 15, 1961 and continue until the total time price has been paid in full . . . .

Title to said property shall remain in the vendor until the price is paid in full.

Executed and sealed this 31st day of October, 1960.

(s)  William A. Conte  (seal)
_____
Vendor

(s)  Homer F. Styli  (seal)
_____
Vendee

## EXHIBIT C

Agreement entered into by and between William A. Conte of Haverhill, Massachusetts and Homer F. Styli of Groveland, Massachusetts.

WITNESSETH: That William A. Conte has this day sold by a Contract of Conditional Sale of Personal Property to Homer F. Styli a diner known as Line Diner located on the real estate of Harry E. Chase, Lafayette Highway, at Seabrook, Rockingham County, New Hampshire. That William A. Conte is the lessee of the real estate of said Harry E. Chase located in said Seabrook, described as follows: [Description of land omitted].

That said lease commences on the 31st day of January, 1961 for a term of one year paying rent therefore the sum of $10.00 weekly; that the said William A. Conte as lessee has an option thereunder to renew the said lease on

the same conditions and terms for three successive one year terms provided that the said lessee gives thirty days notice in writing to the lessor of his intention to exercise said option.

NOW THEREFORE, in consideration of the purchase of said Line Diner by the said Homer F. Styli and for other and valuable consideration the said William A. Conte hereby agrees that the said Homer F. Styli may occupy and use the said premises heretofore described for the term of the said lease, and that upon the full payment of said Contract of Conditional Sale of Personal Property heretofore mentioned the said William A. Conte will assign and transfer all rights of said lease to the said Homer F. Styli . . . .

That the said Homer F. Styli agrees to pay rent for said premises referred to under said lease for the use and occupation of same in the sum of $520.00 yearly, payable in weekly installments of $10.00 to the said William A. Conte and rent is to commence November 7, 1960 (W.A.C. H.F.S.) until the assignment of said lease to the said Homer F. Styli as heretofore mentioned.

IN WITNESS WHEREOF, the parties have hereunto and to an instrument of like tenor set their hands and seals this 31st day of October, 1960.

(s) William A. Conte

(s) William A. Conte
(s) Homer F. Styli

(s) Homer F. Styli

The trial judge, regarded the case as a "Case Stated" and treated as having no standing the requests for rulings filed by the parties.

He concluded his finding with the following:

> "By reason of the ruling in this case, the parties are returned to a status quo and the defendant exonerated from the further performance of his transaction with the plaintiff. However, he had a responsibility to the plaintiff up to the date of the loss which involved the total payment by him of three hundred and sixteen ($316.00) dollars. Since one hundred and forty ($140.00) dollars was paid, the balance due is one hundred and seventy-six ($176.00) dollars. Assuming that the creditor would have first applied payments to the lesser account, I find that the so-called rental was paid in full to the date of the loss, and in view of the foregoing, I find for the defendant on count one of the declaration.

> On count two, I find for the plaintiff in the sum of one hundred and seventy-six ($176.00) dollars, that being the balance of payments due from the defendant to the plaintiff to the date of the loss or destruction of the primary use, with interest on said finding from March 5, 1961."

After reciting that the report contains all the evidence material to the questions reported, the trial judge cited his specific findings, to which the plaintiff claims to be aggrieved, as follows:

> "1. Exhibit C is a written instrument involv-

ing the use and benefit of land located in New Hampshire;

2. It was the intent of the parties that the two written instruments referred to should be co-related and not separated in the dealings between the parties hereto;

3. Exhibit C being so dependent upon performance of Exhibit B, that Exhibit C is an agreement for the use and occupation rather than a lease, and since there is no provision in either agreement relating to a loss, unless in some manner Exhibit B may be interpreted to be an independent instrument relating to personal property only, then in accordance with the law of the State of Massachusetts, the loss incurred by the failure of performance of Exhibit C should fall on the plaintiff;

4. The so-called "diner" in this instance, was real estate and a part of the land involved in Exhibit C;

5. The Commercial Code (Chp. 106, General Laws of Massachusetts) is not applicable to the instant case and the rights of the parties are to be determined in accordance with Massachusetts law, the law of the place of making of the contract;

6. The parties are returned to a status quo and the defendant exonerated from the further performance of his transaction with the plaintiff;

7. I find for the defendant on count one of the declaration; and

8. I find for the plaintiff on count two in the sum of one hundred and seventy-six ($176.00) dollars, that being the balance of payments due from the defendant to the plaintiff to the date of

loss or destruction of the primary use, with interest on said finding from March 5, 1961."

The qualification referred to on page one is the introduction of evidence of the law of the State of New Hampshire. It is of some concern because, ordinarily, such action would change the status of the case from a "Case Stated" to one submitted on "An Agreement As to Evidence" and the treatment by the trial judge of the requests for rulings filed by the parties would be the basis of a report to this Division. *Lapp Insulation Co., Inc. v. B & M RR,* 330 Mass. 205, 206. However, the evidence in this case was immaterial. The trial judge found that the law of the State of New Hampshire did not apply, and we concur in this. His general finding was based entirely on the Agreed Statement of Facts and any inferences that might properly be drawn from them. The general finding, under these circumstances, is a ruling of law to which an aggrieved party can claim a report. *Leshefsky v. Am. Employers Ins. Co.,* 293 Mass. 164, 167.

The issue before the Appellate Division then is whether the general finding of the trial judge was correct on the agreed facts and the proper inferences therefrom. *We do not think it was.*

█ The first question to be decided is whether the contracts are to be interpreted and enforced according to the Laws of our Commonwealth or the State of New Hampshire.

It is a general rule that in all that relates to the nature, validity and interpretation of a contract, the "Lex Loci Contractus" governs and that contracts are presumed to be made with reference to the law of the place where they entered into unless they are entered into with reference to the law of some other State or Country. *Jewett, Jr. v. Keystone Driller Co., 282* Mass. 469, 475; *Atwood v. Walker,* 179 Mass. 514, 518; *Baxter Nat. Bank v. Talbot,* 154 Mass. 213, 216.

And while "Lex Situs" determines questions concerning title, agreements to deal with land are to be treated according to the rule above. *Polson v. Stewart,* 167 Mass. 211; *Selected Readings on Conflicts of Law (West Publishing Co.* 1956) *page* 897. In this case the parties, residents of this State, entered into and executed the contracts in this State. If it is of any importance, there is nothing in the Agreed Statement of Facts that either party had a place of business anywhere at the time the contracts were executed and we do not feel that any inference can properly be drawn that either had a place of business outside of Massachusetts at that time.

As a consequence, the contracts having been entered into in this State by residents of this State, they are to be interpreted and enforced according to the laws of this State. *M. G. L., A. c.* 106, §1-104 *and "Mass. Code Comment" thereunder.*

The two contracts, having been ex-

ecuted at the same time and as parts of the same transaction, are to be construed together. *Clark v. State St. Tr. Co.,* 270 Mass. 140, 150. And the contracts should be construed so as to give them effect as rational business instruments and in a manner which will effectuate the intent of the parties. *Silk v. Everett Bank,* 345 Mass. 277; *McMahan v. Monarch Life Ins. Co.,* 345 Mass. 262.

The contract relating to the use and occupancy of the land in New Hampshire was a sub-lease of that land, together with an agreement to assign the lease at a later date if certain conditions were met.

The parties describe it as a lease in the Agreed Statement of Facts. The contract meets the requirements of a sub-lease—it was entered into by the lessee of the land, was in writing and under seal, was for a definite term at a fixed rent and, if we are to effectuate the intent of the parties, must be interpreted to have given exclusive possession of the premises against all the world, including the owner. *Baseball Pub. Co. v. Bruton,* 302 Mass. 54; *Hall, Mass. Law of Landlord and Tenant*—4th Ed. §3.

Again, to effectuate the intent of the parties, the "Diner" which was the subject of the conditional sales contract and which was located on the land in New Hampshire under lease, must be considered to have been personal property. The parties so describe it in the Agreed Statement of Facts. To regard it as real property would completely defeat

the intent of the parties in making the conditional sales contract. There is nothing in the Agreed Statement of Facts as to the circumstances under which and how the Diner was located on the land in question. Consequently, the intent of the parties must control and their intent is obvious. A rational business man would not and cannot be presumed to attempt to sell property to which he did not have title nor would another rational business man knowingly buy property from one who did not have title.

The conditional sales contract, of which the "Diner" was the subject, is governed by our G. L. c. 106, known as the "Uniform Commercial Code". Under the code, in the circumstances in this case, title passed to the buyer when the conditional sales contract was executed, subject to security interest in the seller, and the risk of loss thereafter was on the buyer. G. L. c. 106, §2-40. And the buyer was thereafter liable to the seller for the sale price of the diner regardless of its destruction. G. L. c. 106, §2-709.

As a consequence, the general Finding of the trial judge, as a matter of Law, was in prejudicial error and should have been for the plaintiff under both counts of his declaration and in the following amounts:

Under Count #1—$380.00
($520.00, the rent for the term of the sublease, less the $140.00 paid by defendant)

### Under Count #2—$1600

The finding is to be vacated and a new finding entered for the plaintiff in the above amounts with interest in each instance from the date of the writ.

Peter Laraba, of Lynn, for the Plaintiff.

Kanelitz, Cohen & Brisson, of Haverhill, for the Defendant.